UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS

In re                                                    Chapter 7, Case No. 11-40840-CJP
        Kimberly Ann Zizza,
                Debtor

TRUSTEE'S MOTION FOR AN ORDER APPROVING THE
ABANDONMENT OF PROPERTY OF THE ESTATE

Janice G. Marsh, the trustee, requests the court to enter an order approving the abandonment of certain personal property of the bankruptcy estate.

1.  On March 6, 2011, the debtor, Kimberly Ann Zizza, commenced this case under chapter 13.

2.  On November 21, 2012, the chapter 13 trustee filed [184] a motion to convert the case to one under chapter 7.

3.  On January 22, 2013, the court [210] granted the [184] motion to convert the case to one under chapter 7; on January 23, 2013, the trustee was appointed.

4.  February 21, 2013, was the original date of the meeting of creditors under 11 U.S.C. section 341.

5.  On February 3, 2013, the debtor filed [223] a motion to reconsider the [210] order, [226] denied on February 6, 2013.

6.  On February 20, 2013, the debtor filed [233] a notice of appeal of the [210] order.

7.  The debtor repeatedly requested the trustee reschedule the meeting of creditors due to, among other things, conflicts, illnesses, the pending appeal[1] and nonappearance at the meeting of creditors.

8.  On October 15, 2013, the trustee conducted the rescheduled meeting of creditors.

9.  At the meeting of creditors, the trustee examined the debtor about, among other things, schedules and the Statements of Financial Affairs she had filed and requested, among other things, documents and information about property.

10. On February 26, 2014, the debtor filed [348] an amended Schedule B and amended Statement of Financial Affairs.[2]

---

[1] On Oct. 18, 2013, the Bankruptcy Appellate Panel issued [289] a judgment affirming the [210] order converting the case to one under ch, 7.

[2] The debtor has not filed any further amended Sch. B or amended Statement of Financial Affairs.

11. The [348] amended Schedule B, item 16, includes the following accounts receivable:
    a. due from Lisa Messier and Danielle Messier, $1,537.50;
    b. due from Pam Doherty, $4,200.73;
    c. due from Burgess, $8,037.99; and
    d. due from Lisa Messier, "unknown" value.

12. The [348] amended Schedule B, item 35, includes the following:
    a. "Judgment for collection," Mary Burgess, 200922CV000605, $8,037.99;
    b. "Judgment for Payment," Lisa Messier, 09D0865DR, "(lein [sic] on file),"
       Worcester Family and Probate Court, "unknown" value;
    c. "Judgment for payment," Lisa Jaskulka-Messier and Danielle Messier,
       Newburyport District Court, 1038CV842, $1,537.50;
    d. "Judgment for payment," Pam Doherty, Newburyport District Court,
       $4,200.73; and
    e. "Domestic Support Obligation," in an "unknown" amount, including child
       support in the amount of $30,000 and health insurance, payment of
       medical bills, life insurance and dental insurance, all in unknown amounts,
       against the debtor's former husband, Scott Zizza.

13. The trustee seeks to abandon, pursuant to 11 U.S.C. section 554(a), the properties
    specified in paragraphs 11 and 12 because, after having made a diligent inquiry,
    she has concluded that the properties are burdensome to the estate or the
    properties are of inconsequential value and benefit to the estate, as more fully
    described below.

14. Regarding the accounts receivable due from, and "Judgment for payment" against
    Lisa Jaskulka-Messier and Danielle Messier, $1,537.50:

    a. On November 22, 2011, the debtor and the defendants, Lisa Jaskulka-
       Messier and Danielle Messier, entered into an Agreement for Judgment in
       the amount of $3,537.50, payable $100.00 per month beginning on June
       20, 2012.

    b. On December 2, 2011, the debtor obtained a Judgment for Plaintiff(s)
       against the defendants in the amount of $3,537.50.

    c. The trustee has tried, unsuccessfully, to locate the defendants.   The
       trustee's efforts have included asking the debtor for information and
       conducting searches, online, at the Registry of Deeds, Whitepages, and
       otherwise on the internet.

    d. As a result, the trustee has concluded that the properties are burdensome to
       the estate or the properties are of inconsequential value and benefit to the
       estate.

15. Regarding the accounts receivable due from, and the "Judgment for Payment" and "(lein [sic] on file)" against, Lisa Messier in an "unknown" amount:

a. Lisa Messier is the same person as Lisa D. Jaskulka-Messier and Lisa Jaskulka-Messier, the subject of the properties described in paragraph 14 above, and also known as Lisa Brown.

b. The trustee received from the debtor a statement in the amount of $20,588.25, including interest, the debtor contends she filed with the Probate and Family Court in connection with legal services the debtor provided to Lisa Messier in her divorce proceeding filed by her husband, Kevin Messier. The statement appears to be an exhibit to an opposition the debtor filed on August 10, 2010.

c. After a hearing on October 29, 2010, Justice Roach of the Probate and Family Court, on June 24, 2011, entered an Order on Motion to Establish and Enforce Attorney's Lien in the amount of $13,041.64 for "reasonable fees and expenses" in the debtor's favor and against Lisa Messier.

d. Therefore, it appears Justice Roach allowed the debtor fees and expenses in the amount of $13,041.64 and disallowed the balance the debtor was seeking.

e. Although the debtor, five months later, on November 22, 2011, entered into an Agreement for Judgment with Lisa Messier and her daughter, the debtor did not enter into any Agreement for Judgment with Lisa Messier for any amounts allegedly owed in connection with any legal services the debtor had provided to Lisa Messier in the divorce proceeding, and the debtor did not sue Lisa Messier to obtain a judgment for any such amounts.

f. The debtor did not record the Order on Motion to Establish and Enforce Attorney's Lien with the Registry of Deeds, and she did not obtain an execution against Lisa Messier.

g. On March 5, 2012, Justice Meagher of the Probate and Family Court entered a Judgment of Contempt in favor of the plaintiff, Kevin Messier, and against the defendant, Lisa Messier, and ordered her to "permanently vacate, within forty-eight hours, the former marital home located at 78 N. Sturbridge Road, Charlton, MA. Thereafter, the Plaintiff shall have exclusive use and occupancy of the real estate . . . [and] shall have sole authority to execute a purchase and sale agreement for the former marital home on behalf of the sellers." The Judgment of Contempt is recorded with the Registry of Deeds (book 49042 and page 19).

h.  On May 29, 2012, a Quitclaim Deed for the property was recorded with the Registry of Deeds (book 49042 and page 21); only Kevin Messier signed the Quitclaim Deed.

i.  On February 15, 2014, the trustee received from the debtor information, specifically, "there is a lien on the file in the Worcester Family and Probate Court.  The court has already adjudicated as to the entitlement and amount of fees in that case and put a lien on the file.  She has nothing besides the martial [sic] home which there is a homestead on.  I do not believe she even has a car.  There are a lot of liens on the home.  She is on [redacted] or SSI due to [redacted] issues . . . . I'm sure there's an affidavit on file with the court as to work done but as said above the court has already ruled on it and I have no records.  I represented her for about 3 or 4 months.  Her address is/was at 78 North Sturbridge Rd., Charlton, MA 01507."

j.  On November 18, 2014, the trustee received from the debtor a copy of an article that had been published in the *Boston Globe* on March 26, 2014.  According to the article, Lisa Brown and her former husband would receive $3 million to settle a civil rights lawsuit alleging that prison guards were responsible for their son's death.  Notably, the settlement was awarded two years after Lisa Messier, a/k/a Lisa Brown, had been evicted, by March 8, 2012, from the marital residence.

k.  The trustee has tried, unsuccessfully, to locate Lisa Messier.  The trustee's efforts have included asking the debtor for information and conducting searches, online, at the Registry of Deeds, Whitepages, and otherwise on the internet.

l.  As a result, the trustee has concluded that the properties are burdensome to the estate or the properties are of inconsequential value and benefit to the estate.

16. Regarding the accounts receivable due from, and "Judgment for payment" against, Pam Doherty, $4,200.73:

a.  On February 15, 2014, the trustee received from the debtor information, specifically, the judgment was for work done in 2008; the debtor was informed Pam Doherty had moved to Toronto, Canada; before filing suit, the debtor and Pam Doherty would enter into agreements and "never follow through"; and the debtor had no idea where Pam Doherty was or how to get in touch with her.

b.  On November 23, 2014, the trustee received from the debtor a copy of Pam Doherty's Facebook page, mentioning Lakeview, Mass.  The debtor wrote that this was all the information the debtor had on Pam Doherty,

who had agreed to payment arrangements several times prior to the debtor's filing a lawsuit, but Pam Doherty never followed through with any agreement and she would not return calls, etc.

c.  The latest information the trustee has received from the debtor was that she thought Pam Doherty owned a "dog business" in Newbury, Mass.

d.  The trustee has tried, unsuccessfully, to locate Pam Doherty.  The trustee's efforts have included asking the debtor for information and conducting searches, online, at the Registry of Deeds, Whitepages, and otherwise on the internet.

e.  As a result, the trustee has concluded that the properties are burdensome to the estate or the properties are of inconsequential value and benefit to the estate.

17. Regarding the accounts receivable due from, and "Judgment for collection" against, Mary Burgess, $8,037.99:

a.  On December 18, 2007, Mary Burgess acquired an interest in real property located at 44 Toll Road, Salisbury, Mass. ("Property"), pursuant to a Quitclaim Deed recorded that day (book 27397 and page 307).

b.  On December 18, 2007, a mortgage in the amount of $225,000.00 was recorded against the Property (book 27397 and page 309).

c.  On September 8, 2009, the debtor sued Mary Burgess for damages in the amount of $7,415.54 for breach of contract for legal services provided by the debtor, in Newburyport District Court, docket no. 200922CV000605.

d.  On September 11, 2009, the debtor recorded with the Registry of Deeds a writ of attachment against the Property (book 28922 and page 325); the writ references the Property (book 27397 and page 307).

e.  On September 29, 2009, Douglas L. Burgess, Mary Burgess' former husband, recorded a notice of Lis Pendens against the Property (book 28958 and page 345).

f.  The debtor obtained an Execution against Mary Burgess; the Execution, issued on January 4, 2010, references a judgment entered on December 21, 2009, in the amount of $8,001.16, docket no. 200922CV000605.

g.  On January 11, 2010, Douglas L. Burgess recorded a mortgage in the principal amount of $32,000.00, plus interest at 3 percent per annum, against the Property (book 29208 and page 284) and a promissory note in

the amount of $32,000.00 and signed by Mary Burgess (book 29208 and page 286).

h.  The debtor did not record the Execution issued on January 4, 2010, and she did not cause any action to be taken on it; a copy of the Execution was not deposited in the Registry of Deeds wherein the Property lies.

i.  As a result, the Property, as of February 4, 2010, was no longer subject to the writ of attachment, as provided under Mass. General Laws chapter 223, section 59; as of February 13, 2010, the attachment became void, as provided under Mass. General Laws chapter 236, section 4.

j.  Pursuant to The Homestead Act, effective March 16, 2011, Mary Burgess had, pursuant to Mass. General Laws chapter 188, section 4, an automatic homestead exemption in the amount of $125,000.00 in the Property.

k.  On July 5, 2011, a Community Development Block Grant ("CDBG") Covenant Between Owner and Salisbury Housing Rehabilitation Program in the total commitment amount of $19,100.00 and signed by Mary Burgess and dated November 10, 2010, was recorded against the Property (book 30508 and page 107) and a Mortgage Security Obligations Under a DHCD Community Development Block Grant Covenant and Note Evidencing Housing Rehabilitation Loan signed by Mary Burgess and dated November 10, 2010, was recorded against the Property (book 30508 and page 120).

l.  On December 17, 2015, Mary Burgess filed a chapter 7 petition, case no. 15-14900.  She listed the Property on her Schedule A and she valued it at $300,000.00; on her Schedule D, the balance of the first mortgage, the debt incurred in December 2007, as $198,293.24; and on her Schedule J, monthly net income of $4.00.  She did not list on her schedules the claims of the debtor, Douglas L. Burgess or the CDBG.  The trustee in the Mary Burgess case filed a report of no distribution, Mary Burgess received a discharge on March 28, 2016, and the case was terminated on April 15, 2016.

m.  In June 2016, the trustee found out about Mary Burgess' bankruptcy case. The trustee negotiated with Mary Burgess a possible settlement or sale of the estate's claim against her.  The trustee received the following alternative offers:  $750, payable on July 20 or within 7 days of acceptance of an agreement; $825, with $425 payable on July 20 and $400 payable on August 20; $900, with $300 payable on July 20, $300 payable on August 20, and $300 payable on September 20; or $1,000, with $400 payable on August 20, $300 payable on September 20 and $300 payable on October 20.  According to Mary Burgess, she would be borrowing the money.  After considering the costs and benefits, the trustee concluded

that none of the offers were acceptable. On August 30, 2016, the trustee wrote to Mary Burgess to inform her that the trustee would be amenable to payment approaching the total amount owed, to which the trustee has received no response.

n. In summary, as of July 5, 2011, the amounts due on mortgages recorded against the Property totaled the balances due on the mortgages

    i. in the original amount of $225,000.00 recorded on December 18, 2007;

    ii. $32,000.00, plus interest at 3 percent per annum, due on the mortgage recorded on January 11, 2010; and

    iii. $19,100.00 due on the mortgage recorded on July 5, 2011.

o. Additionally, Mary Burgess had, effective March 16, 2011, an automatic homestead exemption in the amount of $125,000.00 in the Property.

p. Assuming the amount due on the mortgage in the original amount of $225,000.00 was $198,293 as of July 5, 2011, and adding the amounts due under the mortgages for $32,000.00, plus interest at 3 percent per annum, and for $19,100.00 and adding the automatic homestead exemption in the amount of $125,000.00, the Property would have had to have a value of at least $374,393 before any equity would have been available to pay the debtor's claim against Mary Burgess.

q. According to Zillow.com, Mary Burgess, on April 16, 2010, listed the Property for sale for the amount of $304,900; on May 16, 2010, she changed the price to $299,000; on July 24, 2010, she changed the price to $269,000; on September 25, 2010, she removed the listing.

r. Also according to Zillow.com, the tax assessment of the Property was $243,900 in 2005, $278,000 in 2006, $288,000 in 2007, $278,000 in 2008, $257,200 in 2009, $249,500 in 2010, $233,000 in 2011, $232,900 in 2012, $232,900 in 2013, and $231,300 in 2014.

s. None of the information available to the trustee has indicated that the Property has had a valued anywhere approaching $374,393.

t. As a result, the trustee has concluded that the properties are burdensome to the estate or the properties are of inconsequential value and benefit to the estate.

19. Regarding "Domestic Support Obligation," in an "unknown" amount, including child support in the amount of $30,000 and health insurance, payment of medical bills, life insurance and dental insurance, all in unknown amounts, against the debtor's former husband, Scott Zizza:

a.  The trustee has concluded that, due to the nature of the properties, they are likely inviolate or are not subject to creditors' claims.

b.  As a result, the trustee has concluded that the properties are burdensome to the estate or the properties are of inconsequential value and benefit to the estate.

20. The trustee has "decide[d] that the costs of gathering more information outweigh the potential benefits," she has made her decisions in good faith and she has revealed the substance of what she knows.  *See In re* Mailman Steam Carpet Cleaning Corp., 196 F.3d 1, 37 (1st Cir. 1999).  She asserts also that her abandoning the properties is an exercise of her sound business judgment.

WHEREFORE, Janice G. Marsh, the trustee, requests the court

1.  Approve the abandonment of the properties listed and described in paragraphs 11 through 19 above; and

2.  Grant all other relief to which she is entitled.

Respectfully Submitted,

/s/ Janice G. Marsh
Janice G. Marsh, Trustee
Janice G. Marsh, LLC
446 Main Street, 19th Floor
Worcester, MA  01608
Telephone 508-797-5500
janicemarsh1@gmail.com
BBO No. 638575